**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 19-109-DLB-CJS**

**LOXODONTA AVIATION, LLC**                                                        **PLAINTIFF**


**v.**                         **MEMORANDUM OPINION AND ORDER**


**DELTA PRIVATE JETS, LLC**                                                    **DEFENDANT**

**\*\*\* \*\*\* \*\*\* \*\*\***

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and to Strike Request for Punitive Damages (Doc. # 30).  The Motion has been fully briefed, (Docs. # 35 and # 36), and is now ripe for the Court's review.  For the reasons stated herein, Defendant's Motion is **granted in part and denied in part**.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Loxodonta Aviation, LLC ("Loxodonta") owns a Gulfstream, Model G200 aircraft.  (Doc. # 22 at ¶ 6).  In July 2017, Loxodonta entered into an agreement (the "Agreement") with Defendant Delta Private Jets, LLC ("Delta"),[1] under which Delta agreed

---

[1]      On February 10, 2020, Defendant Delta Private Jets, Inc. filed a notice informing the Court that it converted to a limited liability company named Delta Private Jets, LLC.  (Doc. # 37).  Although the citizenship Delta Private Jets, LLC is not clear based on the record, this Court retains diversity jurisdiction pursuant to 28 U.S.C. § 1332, which is assessed at the time a case is filed.  *See Chevalier v. Estate of Barnhart*, 803 F.3d 789, 803 (6th Cir. 2015).  Plaintiff is a limited liability company whose sole member is a citizen of Florida.  (Doc. # 8-1); *see Delay v. Rosenthal Collins Grp., Inc.*, 585 F.3d 1003, 1005 (6th Cir. 2009) (holding citizen of a limited liability company is determined by the citizenship of its members).  Defendant, at the time of filing, was a corporation organized under the laws of Kentucky with its principal place of business in Kentucky.  (Doc. # 8 at ¶ 3); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010).  Thus, the Court is satisfied that it has subject-matter jurisdiction over this matter based on the complete diversity of the parties and the fact that the amount in controversy exceeds $75,000.  (Doc. # 22 at ¶¶ 1–4).

to manage, maintain, and operate the aircraft as part of its private-jet chartering services that are open to the general public.  *Id.* at ¶¶ 7, 8, 37.  The instant dispute arises out of Delta's alleged failure to properly maintain and manage the aircraft.  *Id.* at ¶¶ 12–17.

Pursuant to the Agreement, Delta was "obligated to maintain the Aircraft in compliance with manufacturer specifications and in conformity with all requirements promulgated by the Federal Aviation Administration," including the requirement that the aircraft be maintained in an airworthy condition.  *Id.* at ¶ 9.  According to the Second Amended Complaint, Delta represented that throughout the period it retained possession of the aircraft (from approximately July 2017 until October 2018), it had maintained the aircraft in an airworthy and safe condition in compliance with federal regulations.  *Id.* at ¶ 10.

On October 1, 2018, Loxodonta hired a new company to manage its aircraft, and an inspection by the new company revealed that Loxodonta's aircraft did not meet the federal airworthiness requirement set forth in 14 C.F.R. Part 135, among other requirements.  *Id.* at ¶ 12.  Because of the aircraft's condition, it was grounded from charter operations for more than seven months, "causing significant and ongoing damages to Loxodonta."  *Id.* at ¶¶ 14, 17.  To bring the aircraft into compliance with federal regulations, Loxodonta "incur[red] substantial cost" to service and repair the aircraft, which involved replacing certain parts that were beyond repair.  *Id.* at ¶ 15.  Plaintiff alleges that Delta should have identified and repaired a majority of the non-conforming items pursuant to the Agreement, as well as pursuant to federal laws and regulations; especially considering that Delta had been using the aircraft to transport members of the general public.  *Id.* at ¶ 16.

Plaintiff filed the instant lawsuit on August 16, 2019.  (Doc. # 1).  On August 29, 2019, Plaintiff filed an Amended Complaint (Doc. # 8) in response to a Court Order noting a jurisdictional defect.   Defendant then filed a Motion to Dismiss (Doc. # 20), which prompted Plaintiff to file a Second Amended Complaint on October 21, 2019 (Doc. # 22). Subsequently, Defendant filed a Motion to Dismiss Plaintiff's Second Amended Complaint and to Strike Request for Punitive Damages (Doc. # 30), which is presently before the Court.  Plaintiff's Second Amended Complaint (the "Complaint") sets forth a breach-of-contract claim (Count I), as well as claims of negligence (Count II), gross negligence (Count III), fraud (Count IV), and negligent misrepresentation (Count V).  (Doc. # 22 at ¶¶ 21–47).

## II.    ANALYSIS

### A.    Standard of Review

In order "to survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint does not have to show that liability is probable but must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In adjudicating a motion to dismiss, the Court accepts all allegations in the complaint as true and considers them in the light most favorable to the plaintiff.  *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Ashcroft*, 556 U.S. at 678; *Twombly*,

550 U.S. at 570).  It need not, however, "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  Merely stating the elements of a claim is insufficient; while "legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  *Ashcroft*, 556 U.S. at 678–79.

When assessing a motion to dismiss, courts "may consider the complaint and any exhibits attached thereto . . . and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein."  *DeJohn v. Lerner, Sampson & Rothfuss*, No. 1:12-cv-1705, 2012 WL 6154800, at *2 (N.D. Ohio Dec. 11, 2012) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  Considering documents beyond these converts a motion to dismiss into a motion for summary judgment.  *Spencer v. Grand River Navigation Co., Inc.*, 644 F. App'x 559, 561–62 (6th Cir. 2016) (citing *Bassett*, 528 F.3d 426, 430 (6th Cir. 2008)).

Although Loxodonta did not attach a copy of the parties' Agreement to the Second Amended Complaint, Defendant attached the Agreement as an exhibit to its Motion to Dismiss.  *See* (Doc. # 30-1).  Since the Agreement is referred to in the Complaint and is central to Plaintiff's claims, the Court will consider the Agreement when evaluating Defendant's Motion to Dismiss without converting the Motion into one for summary judgment.  *See Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 863 (6th Cir. 2020).

**B.    Choice of Law**

Federal courts sitting in diversity apply the substantive law of state in which they reside.  *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) (citing *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938)).  Here, the Agreement contains a choice-of-law provision, which provides that the Agreement shall

be governed by and construed in accordance with the laws of Kentucky.  (Doc. # 30-1 at § 20).  Moreover, the parties appear to be in agreement that Kentucky law governs both Plaintiff's contract and tort claims, as the parties cite only Kentucky case law in their briefing.  *See, e.g.*, (Docs. # 30 at 9, 20 and # 35 at 4, 11).  Because there is no dispute concerning the application of Kentucky law, the Court will not delve into conflicts-of-law analysis and will assess Plaintiff's claims under Kentucky law.  *Lulaj v. Wackenhut, Corp.*, 512 F.3d 760, 764 (6th Cir. 2008) (citing *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991)).

### C.    Breach of Contract

Defendant first argues that Plaintiff's breach-of-contract claim (Count I) should be dismissed as a matter of law, because the damages Plaintiff seeks are precluded by two limitation-of-liability provisions contained in the parties' Agreement.  (Doc. # 30 at 7–10).  The first provision, found in § 11.1(b) and entitled "[Delta] Indemnity," provides as follows:

> Notwithstanding anything in this Agreement to the contrary, [Delta] shall have no liability for any Losses arising out of any inspection conducted pursuant to Section 1.3 of this Agreement or arising out of or relating to the failure of [Delta] at any time to identify any non-conforming parts, systems, avionics, instruments, accessories or appliances, any diminution in value of the Aircraft as a result of such failure of such Aircraft to conform to applicable standards, or any loss or claim asserted by a third party (including any regulatory authority) as a result of any such failure to conform, unless due to the gross negligence or willful misconduct of [Delta].

(Doc. # 30-1 at § 11.1(b)).  The second provision, "Disclaimer of Liability," contained in § 22, states that:

> The parties agree that under no circumstances shall either party be liable to the other for indirect, incidental, consequential, special or exemplary damages or diminution of value following a loss whether in contract or tort (including strict liability and negligence), including but not limited to loss of revenue, loss of use, or anticipated profits.

*Id.* at § 22.  Defendant asserts that the damages Plaintiff requests in the Complaint for its breach-of-contract claim are either precluded by § 11.1(b) because they arise from Delta's alleged failure to identify non-conforming parts or are barred by § 22 because they constitute consequential damages.  (Doc. # 30 at 7–10).

To succeed on a breach-of-contract claim, a plaintiff must show the existence of a valid contract, a breach of that contract, and damages flowing from the breach.  *Humana Inc. v. Celgene Corp.*, No. 7:18-cv-64, 2019 WL 1421151, at *3 (E.D. Ky. Mar. 29, 2019) (citing *Metro Louisville/Jefferson Cnty. Gov't, Inc. v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)); *see also Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952).  Under Kentucky law, an unambiguous contract should be enforced according to its terms as a matter of law.  *Big Sandy Co., L.P. v. EQT Gathering, LLC*, 545 S.W.3d 842, 844–45 (Ky. 2018).  Moreover, Kentucky courts generally uphold and enforce limitations on liability, especially where the contracting parties are of equal bargaining power, *see Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 646–51 (Ky. 2007), and where the limitation does not preclude liability for willful or wanton conduct, *see United Servs. Auto. Ass'n v. ADT Sec. Servs.*, 241 S.W.3d 335, 342 (Ky. Ct. App. 2006).

Loxodonta does not assert that the limitation-of-liability provisions contained in its Agreement with Delta are ambiguous, nor does Plaintiff challenge the provisions as unenforceable.   Moreover, the Court finds, based on its own examination of the Agreement, that the two provisions at issue are not ambiguous, meaning they are not "capable of more than one different, reasonable interpretation."  *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 106 n.12 (Ky. 2003).  In addition, the Court sees no reason to question

the enforceability of the provisions under Kentucky law, as both parties are sophisticated entities, (Doc. # 22 at ¶¶ 2, 3), and the indemnity provision does not preclude recovery for "gross negligence or willful misconduct," (Doc. # 30-1 at § 11.1(b)).  Thus, the Court will enforce the plain meaning of the provisions as a matter of law. *Big Sandy*, 545 S.W.3d at 844–45.

Plaintiff has sufficiently pled a basis for its breach-of-contract claim that falls outside the scope of § 11.1(b)'s limitation on liability for loss related to Delta's failure to identify non-conforming parts.  The Complaint alleges, generally, that Delta breached the Agreement by "failing to manage, maintain and conform the aircraft in compliance with the Federal law, manufacturer's requirements and the terms of the contract."  (Doc. # 22 at ¶ 24); *see also id.* at ¶¶ 9, 14.  More specifically, the Complaint alleges that the aircraft parts found to be non-conforming "should have been identified, documented, scheduled, and repaired or maintained by Delta . . . ." *Id.* at ¶ 16.  Defendant argues this list of failures on the part of Delta all "arise[] out of or relat[e] to" Delta's failure to identify non-conforming parts, and that the claim is therefore precluded by § 11.1(b) of the Agreement.  Yet, another plausible reading of the allegation is that Delta *did* identify non-conforming parts but then failed to "document[], schedule[], and repair[] or maintain[]" the items. *Id.*  Under this reading, Delta's failure to repair and maintain items does not necessarily relate to its failure to initially identify those items.  Drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently pled facts supporting its breach-of-contract claim that are unrelated to Delta's failure to identify non-conforming parts.  Accordingly, the claim survives to the extent it is based on Delta's failure to document, schedule, repair, or maintain identified non-conforming items. *See id.*  However, to the extent Plaintiff's

breach-of-contract claim is based on Delta's failure to identify non-conforming parts, *id.*, the claim fails under § 11.1(b) of the Agreement.

Next, the Court must consider whether Plaintiff has adequately pled damages resulting from Delta's alleged failure to properly maintain the aircraft in light of § 22's bar on consequential damages, which are defined in the Agreement as "including but not limited to" diminution of value, loss of use, lost revenue, and anticipated profits.  (Doc. # 30-1 at § 22).  The Complaint alleges that as a result of Delta's breach, Loxodonta suffered "actual damage and loss," (Doc. # 22 at ¶ 25), and more specifically alleges that Plaintiff "was forced to undertake extensive service on the Aircraft and incur substantial cost in servicing and repairing the Aircraft . . . ."  *id.* at ¶ 15.  Defendant does not argue, and the Court does not find at this stage, that the repair and replacement costs Loxodonta incurred constitute consequential damages as defined by § 22.[2]  Nor are Loxodonta's repair and replacement costs, as alleged, considered consequential damages under Kentucky law.  *See, e.g.*, *Flora v. Morris*, No. 2002-CA-1692, 2003 WL 21476115, at *5 (Ky. Ct. App. June 27, 2003) (characterizing cost to repair defect as actual damages); *Home Ins. Co. v. Steinberg*, 253 Ky. 388, 393 (Ky. Ct. App. 1934) (characterizing cost of repairs to building damaged by fire as actual damages); *Reed v. Mercer Cnty. Fiscal Court*, 295 S.W. 995, 996 (Ky. Ct. App. 1927) (explaining that the measure of actual damage is usually the cost of restoring the damaged item).  Thus, Plaintiff has adequately pled damages recoverable under the Agreement resulting from Delta's alleged failure to

---

[2]     Besides the cost of repairing and replacing items, the other damages Plaintiff specifically alleges in the Complaint constitute the types of consequential damages that are expressly barred by § 22.  *See* (Doc. # 22 at ¶ 15) (Loxodonta incurred "significant expense in lo[st] profits, loss of use and diminution value."); *see also id.* at ¶ 17 (Loxodonta's inability to charter the aircraft for more than seven months "has caused and continues to cause Loxodonta extensive and ongoing damages").

properly maintain the aircraft.

In addition to Delta's alleged failure to maintain the aircraft, Plaintiff points to a second basis for its breach-of-contract claim: Delta's alleged "under-chartering" of the aircraft, meaning that Delta "failed to use the Aircraft at the same volume as other similar super midsize aircraft in its fleet." *Id.* at ¶ 18. This conduct also appears to fall outside the scope of § 11.1(b)'s exclusion of liability for loss related to Delta's failure to identify non-conforming parts. However, Plaintiff has not adequately pled damages to support this claim that would be recoverable under the Agreement considering § 22's bar on consequential damages.

Loxodonta does not specifically allege damages flowing from Delta's under-chartering of the aircraft. As discussed above, while the Complaint alleges generally that Delta's breach of the Agreement resulted in "actual damage and loss," *id.* at ¶ 25, the only allegation in the Complaint arguably related to actual damages concerns the cost of repairing and replacing non-conforming parts. *See id.* at ¶ 15. It is not apparent from Plaintiff's allegations how underutilizing the aircraft could have resulted in the need to repair and replace parts. Without further factual support, Plaintiff's conclusory allegation that it sustained "actual damages" as a result of Delta's breach of the Agreement falls short of sufficiently alleging actual damages flowing from Delta's under-chartering of the aircraft. *See Bank of Am., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 2d 689, 704 (E.D. Ky. June 19, 2012) ("Merely claiming to have suffered damages, without more, epitomizes conclusory pleading.") (quoting *Eichholz v. Wells Fargo Bank, N.A.*, No. 10-cv-13622, 2011 WL 5375375, at *5 (E.D. Mich. Nov. 7, 2011)). Thus, Plaintiff's breach-of-contract claim fails to the extent it is based on Delta's under-chartering of the aircraft.

In sum, Plaintiff's breach-of-contract claim fails as a matter of law under § 11.1(b) of the Agreement to the extent that it is based on Defendant's failure to identify non-conforming parts.  Yet, the claim may proceed to the extent it is based on Delta's identification of non-conforming parts but failure to then document and/or schedule those parts for maintenance.  Insofar as Plaintiff intended to ground its breach-of-contract claim on Delta's under-chartering of the aircraft, Plaintiff has not adequately alleged how that conduct resulted in actual damages, and therefore, the claim fails under § 22's bar on consequential damages.  Based on a straight-forward application of the Agreement's limitation-of-liability provisions, Defendant's motion to dismiss Plaintiff's breach-of-contract claim is **granted in part and denied in part**.

### D.    Negligence and Gross Negligence

Next, Defendant argues that Plaintiff's claims of negligence (Count II) and gross negligence (Count III) should be dismissed as duplicative of Plaintiff's breach-of-contract claim.  (Doc. # 30 at 10–14).  Delta is correct that under Kentucky law, a plaintiff may bring both a breach-of-contract and negligence claim only when the negligence claim is based on the breach of some duty independent of the contractual obligations between the parties.  *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 791–92 (Ky. 2017) (*citing Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 589 (Ky. 2004) (Keller, J., concurring)); *see also Nelson v. Columbia Gas Transmission*, 808 F. App'x 321, 330 (6th Cir. 2020) (applying Kentucky law to affirm dismissal of the plaintiff's negligence and trespass claims as "contract claims repackaged as tort claims," finding no independent legal duty outside the parties' contractual obligations).  This is because "parties to a contract agree to allocate risks and thus do not

need 'the special protections of tort law to recover for damages caused by the breach of contract.'"  *Superior Steel*, 540 S.W. 3d at 791 (quoting *Presnell*, 134 S.W.3d at 589).

In setting forth its negligence claim, Plaintiff alleges that Delta "had a duty to Loxodonta to thoroughly review conformance of the Aircraft and maintain the subject Aircraft in an airworthy condition" and that Delta breached this duty by failing to identify and repair non-conforming items.  (Doc. # 22 at ¶¶ 27–28).  In addition, the Complaint asserts that Delta is liable for gross negligence because it breached its "duty to Plaintiff, Loxodonta, and to the general public, who were flying on the Aircraft as passengers, to maintain and operate the Aircraft in an airworthy and safe condition in full compliance with the federal law and FAA safety requirements."  *Id.* at ¶¶ 32.

Plaintiff has failed, however, to identify a duty owed to Loxodonta that is independent of Delta's contractual obligations.  The duties Plaintiff identifies in support of its negligence and gross-negligence claims—Delta's duty to "thoroughly review conformance of the Aircraft and maintain the subject Aircraft in an airworthy condition," *id.* at ¶ 27, and its duty "to maintain and operate the Aircraft in an airworthy and safe condition in full compliance with [federal laws and regulations]," *id.* at ¶ 32—closely mirror Delta's contractual duty to "maintain the Aircraft in compliance with manufacturer specification and in conformity with [federal aviation laws and regulations], including maintaining the airworthiness of the Aircraft . . . ."  *Id.* at ¶ 9; *see also id.* at ¶ 24 ("[Delta] has materially breached its *contractual obligations* to Loxodonta by failing to maintain and conform the aircraft in compliance with the Federal law, manufacturer's requirements and the terms of the contract.") (emphasis added).

11

Plaintiff also argues in its response brief that Delta had an independent duty to the general public (including Loxodonta), pursuant to federal laws and regulations, to maintain and operate the aircraft safely and in compliance with those laws and regulations.  (Doc. # 35 at 8–10); *see, e.g.*, (Doc. # 22 at ¶ 32) ("[Delta] owed a duty to Plaintiff, Loxodonta, and to the general public who were flying on the Aircraft as passengers" to maintain the aircraft in compliance with federal laws and regulations). However, this duty does not arise independent of the parties' Agreement, as the Agreement expressly incorporates Delta's obligation to maintain and operate the aircraft in an airworthy and safe manner pursuant to federal aviation laws and regulations.  (Doc. # 30-1 at § 3.1) ("Delta shall . . . maintain the Aircraft . . . in a condition necessary to enable the airworthiness certification of the Aircraft to be maintained in good standing at all times under the FAA regulations applicable to commercial operation of the Aircraft under Part 135."); *see Ronald A. Chisholm, LTD v. Am. Cold Storage, Inc.*, No. 3:09-cv-808, 2013 WL 4042036, at *5 n.6 (W.D. Ky. Aug. 8, 2013) ("The statutory duty [the defendant] identifies does not satisfy the independent duty exception because the contract between [the parties] incorporates the terms of the statute verbatim.").

Further, Delta's general, statutory obligations to maintain the airplanes it charters in an airworthy condition only extended to Loxodonta's aircraft, in particular, because of the parties' Agreement.  In other words, the Complaint does not plausibly allege that Delta had any duty *to Loxodonta* independent of the parties' Agreement.  *See Jenkins v. Best*, 250 S.W.3d 680, 691 (Ky. Ct. App. 1953) ("[O]ur courts have never found liability in tort unless we have first found circumstances giving rise to a relationship of some kind in which one particular party owed a duty to another particular party.").

Moreover, to the extent the Complaint alleges negligence or gross negligence based on Delta's alleged violations of federal aviation statutes and regulations, (Doc. # 22 at ¶¶ 33–34), this amounts to, in effect, a claim of negligence per se.  A negligence-per-se claim "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care."  *Pile v. City of Brandenburg*, 215 S.W.3d 36, 41 (Ky. 2006).  Construing either of Plaintiff's negligence claims as one of negligence per se, does not, however, help the Plaintiff.  This is because under Kentucky law, "[v]iolations of federal laws and regulations . . . do not create a cause of action based on [Kentucky's negligence-per-se statute]."  *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011); *see also Cemex, Inc. v. LMS Contracting., Inc.*, No. 3:06-cv-124, 2009 WL 3171977, at *4 (W.D. Ky. Sept. 28, 2009) (dismissing negligence claim where plaintiff alleged a statutory duty independent of the parties' contract, finding the claim to be "in essence" a non-cognizable negligence-per-se claim).

Because Plaintiff has not alleged that Delta owed Loxodonta a duty independent of the parties' Agreement, Defendant's motion to dismiss Loxodonta's negligence and gross-negligence claims is **granted**.[3]

### E.    Fraud

Defendant further asserts that Plaintiff's fraud claim (Count IV) should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard and because the claim is duplicative of Plaintiff's breach-of-contract claim.  (Doc. # 30 at 14–15).  Plaintiff's fraud claim is based on the allegation

---

[3]    In light of the Court's conclusion that the dismissal of Plaintiff's negligence and gross-negligence claims is warranted on this basis, the Court declines to address Defendant's alternative argument that Plaintiff has not adequately alleged damages in support of its negligence claim.  *See* (Doc. # 30 at 11).

that Delta, "through its agent Scott Gossett, at the time Senior Vice President of Maintenance, made material misrepresentations to Loxodonta before, during and after the business relationship with the Parties commenced in July of 2017 that the Aircraft would be maintained in an airworthy condition . . . ."  (Doc. # 22 at ¶ 37).  Plaintiff alleges that Delta "knew or should have known" the representation was false, because during the fourteen-month period Delta possessed the aircraft, it did not conduct inspections to identify non-conforming parts, document items requiring maintenance, or maintain the aircraft in an airworthy condition.  *Id.* at ¶ 38.

Defendant's second argument, that Plaintiff's fraud claim is duplicative of its breach-of-contract claim, is misguided.  Defendant specifically asserts that Loxodonta's fraud claim is redundant because it is based on Delta's representation—in the parties' Agreement—that Delta would maintain the aircraft in an airworthy condition.   (Doc. # 30 at 16).  Yet, the general rule in Kentucky that a plaintiff may not bring a claim in tort based on the breach of a contractually-created duty does not apply to certain common-law torts, including fraud, that "were expressly designed to remedy economic loss and thus exist independent of a breach of contract claim."  *Laurel Grocery Co., LLC v. Freshway, Inc.*, No. 6:18-cv-243, 2019 WL 7290469, at *8 (E.D. Ky. Dec. 30, 2019) (quoting *Superior Steel*, 540 S.W.3d at 792).  Fraud claims, "at bottom," are based on "a duty of honesty in qualifying circumstances," and therefore, "stand independent of any contract duty."  *Id.* Here, Plaintiff alleges that Delta's misrepresentation "induced Loxodonta into commencing and continuing the business relationship between the Parties," (Doc. # 22 at ¶ 41), and therefore, relies on pre-contractual conduct, as well as on Delta's alleged continued misrepresentations during the contract period that it was properly maintaining

the aircraft,  *see id.* at *11 (permitting fraudulent inducement claim to proceed to discovery where claim was based on pre-contract representations); *see also id.* at *8 n. 16 ("[A] breaching party must not actionably mislead the non-breaching party about the breach; a duty separate from the contractual 'perform or pay' obligation.").  Thus, under Kentucky law, Plaintiff is permitted to plead fraud along with breach of contract.

Nevertheless, the Court agrees with Defendant that Loxodonta has not pled fraud "with particularity," as required by Federal Rule of Civil Procedure 9(b).  The heightened pleading requirement for fraud claims requires, at a minimum, that the plaintiff "allege the time, place, and content of the alleged misrepresentation on which he or she relied." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)).  Further, a plaintiff must allege "the fraudulent scheme; the fraudulent intent of the defendant; and the injury from the fraud."  *Id.* (citing *Coffey*, 2 F.3d at 161–62); *see also Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) ("[A] plaintiff must (1) 'specify the alleged fraudulent statements,' (2) 'identify the speaker,' (3) state 'when and where the statements were made,' and (4) 'explain what made the statements fraudulent.'").  Rule 9(b) should not, however, be read to "reintroduce formalities to pleading."  *United States ex rel. Sheldon Kettering Health Network*, 816 F.3d 399, 816 F.3d 399, 408 (6th Cir. 2016) (quoting *Bledsoe*, 501 F.3d at 503).  The "overarching" purpose of Rule 9(b) is to "ensure that [the] defendant possesses sufficient information to respond to an allegation of fraud."  *Id.* (quoting *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)).

Defendant specifically argues that Plaintiff has not pled with particularity *where* the fraudulent statements were made or *when* the statements were made.  (Doc. # 30 at 15). Rule 9(b) does not require a plaintiff to identify the exact name or address of the location where the fraud occurred.  *See, e.g.*, *Express Energy Servs. Operating, L.P. v. Hall Drilling, LLC*, No. 2:14-cv-204, 2014 WL 3456923, at *7 (S.D. Ohio July 11, 2014); *Sadler v. Gen. Elec. Co.*, No. 3:17-cv-328, 2017 WL 4158644, at *4 (W.D. Ky. Sept. 19, 2017). For example, courts have found the location of the fraud sufficiently alleged where the complaint stated the fraud occurred at "the location of the sales presentation," *Express Energy*, 2014 WL 3456923, at *7, or specified the medium in which the fraudulent statement was made, i.e., via email or phone, *Sadler*, 2017 WL 4158644, at *4.

Here, the Complaint does not provide any information concerning where or in what manner Delta made the allegedly fraudulent statements.  It does not, for instance, specify whether Delta made the statements at the place of contract negotiations or at Plaintiff or Defendant's place of business; nor does the Complaint indicate whether the statements were made in person or by phone or email.  Consequently, Plaintiff has not adequately pled the "place" of fraud with specificity under Rule 9.  *See Windsor-Laurelwood Ctr. v. Waller Lansden Dortch & Davis*, No. 1:13-cv-98, 2013 WL 12303992, at *6 (N.D. Ohio July 24, 2013) (finding location of fraud insufficiently pled as plaintiff failed to specify whether the fraudulent statements were made at the plaintiff's place of business, at the defendant's office, or via email or phone).

Loxodonta has also failed to allege *when* Delta fraudulently represented that it would maintain the aircraft in an airworthy condition.  At one point, the Complaint alleges that Delta made such representations "during the contracting period," (Doc. # 22 at ¶ 10),

and at another point, it states that Delta made the misrepresentations "before, during and after the business relationship between the Parties commenced in July of 2017 . . . ." *id.* at ¶ 37. These allegations do not sufficiently narrow down when Delta made the misrepresentations for purposes of Rule 9(b) to allow Delta to respond to the allegation of fraud in a meaningful way. *See, e.g.*, *Cooper v. Team Wellness (Mental Health) Servs. Super.*, No. 18-1162, 2018 WL 7360647, at *1–2 (6th Cir. Oct. 11, 2018) (finding when the fraud occurred insufficiently pled where complaint stated fraud occurred during employment from July 11, 2011 to April 11, 2012); *Rantu v. United States Bank*, 557 F. App'x 411, 414 (6th Cir. 2014) (finding allegation that representations were made "up to and through closing"—comprising the entire period of the contractual relationship—insufficient under Rule 9(b)); *see also Hinman v. Valleycrest Landscape Dev., Inc.*, No. 3:19-cv-551, 2020 WL 434161, at *20 (M.D. Tenn. Jan. 28, 2020) (allegation that representation was made "at or prior to the time of contracting" insufficient under Rule 9(b)).[4]

Because Plaintiff has not adequately pled where or when Delta allegedly misrepresented that it would properly maintain the aircraft, Defendant's motion to dismiss Plaintiff's fraud claim is **granted**.[5]

### F.    Negligent Misrepresentation

Finally, Defendant argues that Plaintiff's negligent-misrepresentation claim (Count

---

[4]      Plaintiff's further allegation that it relied on Delta's representations "to the general public, and to owners of [the] aircraft" it manages that Delta maintains its fleet in an airworthy condition does not salvage Plaintiff's fraud claim, (Doc. # 22 at ¶¶ 39, 40), as Plaintiff also does not specify when or where such representations were made.

[5]      Because the Court has dismissed Plaintiff's gross-negligence and fraud claims, for which Plaintiff sought punitive damages, (Doc. # 22 at ¶¶ 35, 42), Defendant's Motion to Strike Plaintiff's request for punitive damages, (Doc. # 30 at 19–21), is denied as moot.

V) should be dismissed for failure to state a claim.  (Doc. # 30 at 17).  Kentucky courts recognize the tort of negligent misrepresentation and have adopted the elements set forth in the Restatement (Second) of Torts § 552.  *PCR Contractors, Inc. v. Daniel*, 354 S.W.3d 610, 617 (Ky. Ct. App. 2011) (citing *Presnell*, 134 S.W.3d at 582).  A claim of negligent misrepresentation arises when a party

> (1) In the course of [ ] business or a transaction in which [it] has a pecuniary interest, (2) supplies false information for the guidance of others in their business transactions, if (3) [it] fails to exercise reasonable care or competence in obtaining or communicating the information and (4) the plaintiff justifiably relied on the information.

*KSA Enters. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 462 (6th Cir. 2019) (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 713 (W.D. Ky. 2010), *aff'd*, 683 F.3d 239 (6th Cir. 2012)).

In support of its negligent-misrepresentation claim, Plaintiff asserts that Delta "negligently or grossly negligently" provided "false and fraudulent facts" "representing that the Aircraft would be maintained in [an] airworthy condition," (Doc. # 22 at ¶ 44), and that the aircraft would be used at least as often as the other aircraft in Delta's fleet, *id.* at ¶ 45. The Complaint similarly alleges that Delta "represented in its contract with Loxodonta, and its statements to Loxodonta, both before entering into the management agreement and during the management term, that the aircraft would be airworthy and would be operated in compliance with federal law." *Id.* at ¶ 46.  In addition, Plaintiff alleges that Delta "represented to the United States Government and the FAA that it would in fact maintain the Aircraft when it conformed the Aircraft to its 14 CFR 135 Certificate" and that Loxodonta "reasonably relied on the false and material information and guidance supplied." *Id.*

These allegations all essentially state that Delta represented that it *would* do something (maintain the aircraft and fly it as often as other planes), when it, in fact, failed to do so.  However, a "statement of future intent" is not considered a "misrepresentation" and cannot support a negligent-misrepresentation claim.  *PCR*, 354 S.W.3d at 617–19.  When a party promises to do something in the future, but then does not follow through— to call that initial promise a "misrepresentation" implies that it was not well-intentioned at the time it was made.  *Id.*  Thus, courts consider a claim based on a false promise to be one of intentional, rather than negligent misrepresentation.  *Id.* at 618–19; *see also KSA Enters.*, 761 F. App'x at 462 (applying Kentucky law to dismiss negligent-misrepresentation claim to the extent it was based on defendant's intention to do something in the future).  Consequently, Plaintiff's reliance on what Delta said it *would* do is not a permissible basis for a negligent-misrepresentation claim under Kentucky law.

Plaintiff's "general allegation" that Delta "represented that during the contracting period, it *had* fully complied with all 14 CFR Part 135 requirements and *had* fully maintained the Aircraft in an airworthy and safe condition," (Doc. # 22 at ¶ 10) (emphasis added), may support its negligent-misrepresentation claim.  Nevertheless, Plaintiff's negligent-representation claim fails for another reason: Plaintiff has not pled the claim with the requisite level of specificity under Federal Rule of Civil Procedure 9(b).  Claims of fraudulent misrepresentation based on Kentucky law are subject to Rule 9(b)'s heightened pleading standard, requiring that a plaintiff "allege the time, place, and content of the alleged misrepresentation on which he or she relied," as well as "the fraudulent scheme; the fraudulent intent of the defendant; and the injury from the fraud."  *Bledsoe*, 501 F.3d at 504 (quoting *Coffey*, 2 F.3d at 161–62).

As with Plaintiff's fraudulent-misrepresentation claim, Plaintiff does not specify when Delta made the alleged negligent misrepresentations beyond stating they were made "before entering into the management agreement and during the management term." (Doc. # 22 at ¶ 46). This statement, encompassing the entire contract period, and beyond, does not adequately specify *when* the representations were made under Rule 9(b). *See Cooper*, 2018 WL 7360647, at *1–2; *Rantu*, 557 F. App'x at 414; *Hinman*, 2020 WL 434161, at *20. Nor does Plaintiff plead in any way where the misrepresentations were made. The closest the Plaintiff comes to pleading where or in what manner Delta made a misrepresentation is with respect to its allegation that Delta "represented to the United States Government and the FAA that it would in fact maintain the Aircraft when it conformed the Aircraft to its 14 CFR 135 Certificate"—information Plaintiff allegedly relied on. (Doc. # 22 at ¶ 46). However, this allegation still falls short of pleading in what manner or form Delta communicated this information to the government and when that information was communicated. Accordingly, Delta's motion to dismiss Plaintiff's negligent-misrepresentation claim is **granted**.[6]

### G.  Dismissal with Prejudice

Defendant specifically requests that the Court dismiss Plaintiff's claims with prejudice, rather than provide the Plaintiff a further opportunity to amend its Second Amended Complaint. (Doc. # 30 at 19). The Plaintiff has not requested leave to further amend the Complaint and does not state in its response brief how, with a further opportunity to amend, the Plaintiff could cure the deficiencies raised by Defendant. Thus,

---

[6]    In light of this conclusion, the Court again declines to address Defendant's alternate argument that Plaintiff has not adequately pled damages with respect to its negligent-misrepresentation claim.

to the extent the Court is dismissing Plaintiff's claims, that dismissal is with prejudice. *See United States ex rel. Roycroft v. GEO Grp. Inc.*, 722 F. App'x 404, 408 (6th Cir. 2018) (noting that "a district court does not abuse its discretion where . . . the plaintiff never sought leave to amend" (citing *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 387 (6th Cir. 2017))).

## III.   CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and to Strike Request for Punitive Damages (Doc. # 30) is **GRANTED IN PART and DENIED IN PART**.  Specifically:

(a)   Plaintiff's negligence claim (Count II), gross-negligence claim (Count III), fraud claim (Count IV), and negligent-misrepresentation claim (Count V) are **dismissed with prejudice**;

(b)   Plaintiff's breach-of-contract claim (Count I) is **dismissed with prejudice** to the extent it is based on Defendant's failure to identify non-conforming parts, (Doc. # 22 at ¶ 16), or under-chartering of the aircraft, *id.* at ¶ 18, and shall **proceed to discovery** to the extent it is based on Defendant's identification of non-conforming parts but subsequent failure to document, schedule, and repair or maintain those parts, *id.* at ¶ 16; and

(c)   Defendant's motion to strike Plaintiff's request for punitive damages is **denied as moot**.

(2)      **Within fourteen (14) days** of the entry of this Order, and pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant **shall file an Answer** to the remaining viable claim in the Second Amended Complaint.

This 5th day of August, 2020.



Signed By:

*David L. Bunning*

United States District Judge

J:\DATA\ORDERS\Cov2019\19-109 MTD.docx